IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| ANTHONY REEFER )<br>14329 OWENS AVE. )<br>BRANDYWINE, MD 20613 )<br> )<br>    Plaintiff )<br> )<br>v. )<br> )<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY )<br> )<br>    Defendant )<br> ) | Civil Action No._____<br><br>Jury Requested |

# COMPLAINT

**COMES NOW** Plaintiff, Anthony Reefer (hereinafter "Plaintiff" or "Mr. Reefer"), by and through his undersigned counsel, and sues Washington Metropolitan Area Transit Authority (hereinafter "WMATA" or "Defendant"), and for cause of action states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, for relief from racial discrimination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3. Venue is appropriate and is based on the fact that a substantial part of the

actions complained of are the result of actions and the employment practices of Defendant, a municipality within the State of Maryland. *Id*.

## EXHAUSTION OF REMEDIES

4.  Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against WMATA alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et. seq.*, identified as EEOC Charge No.570-2019-01840.

5.  Plaintiff has exhausted all of his administrative remedies.

6.  Plaintiff submitted a Form 5 Charge to the EEOC alleging that WMATA had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon his race.

7.  On July 26, 2019, Plaintiff received a Dismissal and Notice of Rights letter from the Equal Employment Opportunity Commission stating that Plaintiff had ninety (90) days to file suit, if he so desired.

8.  On October 23, 2019, Plaintiff timely filed his action within ninety (90) days of receipt of the EEOC's "Notice of Right to Sue."

## PARTIES

9.  Plaintiff is currently domiciled at 14329 Owens Ave., Brandywine, Maryland. Plaintiff is a resident of the State of Maryland and a United States citizen.

10. Defendant WMATA is an instrumentality created by Congress to operate a mass transit system in the state of Maryland and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of *Respondeat Superior*.

## FACTUAL BACKGROUND

11. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

12. Plaintiff was hired by Defendant on January 12, 2004 as a Police Officer, and during the time at issue he was assigned to District II B-Section Patrol.

13. During the time at issue, Mr. Reefer's first level supervisor was Sgt. Salicia Belton, his second level supervisor was Lt. Deveau and Ronald Pavlik was the Chief of Police.

14. During Plaintiff's tenure in Defendant's employ, Plaintiff's evaluations were above average, and the incident at issue is the first of its kind in which he was involved.

15. On or about July 20, 2018, Mr. Reefer encountered a disorderly Subject at a WMATA train station.

16. The Subject attempted to evade paying his Metro fare on several occasions and was not only ignoring Mr. Reefer's orders, but also yelling at him and using vile and violent language.

17. The Subject walked towards Mr. Reefer with a clinched fist.

18. Mr. Reefer subdued the Subject and ran a warrants check.

19. Mr. Reefer advised that the Subject informed him that he had been diagnosed with several mental illnesses.

20. Mr. Reefer decided to let the Subject go once he appeared to calm down and did not appear as harmful as before.

21. When Mr. Reefer returned to the Special Operations Division in Camp Springs, Maryland, he completed and submitted electronically the MTPD Use of Force Report which automatically notifies the supervisor when it is submitted.

22. Mr. Reefer later learned that numerous employees have submitted this report through the electronic system but unbeknownst to him at the time, it was an unreliable system that loses reports, and management was aware of this.

23. Two months later, Sgt. Erin Donald from the Office of Professional Responsibility and Inspections (OPRI), notified Mr. Reefer that a complaint was filed against him in OPRI on or about August 16, 2018, (by the Subject that he encountered in the train station on July 20, 2018), and Sgt. Donald told him to come down town to Metro Headquarters in Washington, D.C.

24. Mr. Reefer went to Metro Headquarters where he was met by Sgt. Donald (Black) and Sgt. Daniele Alvarez (Hispanic).

25. Sgts. Donald and Alvarez took a recorded statement from Mr. Reefer and the next day, per protocol, he was placed on Administrative Leave suspending his police powers while an investigation into the complaint allegations was conducted.

26. Mr. Reefer was put back on full duty on September 12, 2018, and told by Captain Gregory Hannah that they were going to clear him because OPRI found that there was no wrong doing on Mr. Reefer's part.

27. Despite this, Chief Pavlik told OPRI to give the investigation to the Maryland State's Attorney's Office to investigate for Second Degree Assault and Misconduct in Office, however, the Maryland State's Attorney's Office declined to take it.

28. Consequently, Chief Pavlik asked if it could be taken to the grand Jury.

29. On or about October 23, 2018, the case went before a Grand Jury and Mr. Reefer was indicted for Second Degree Assault and Misconduct in Office.

30. On or about October 28, 2018, Mr. Hannah placed Mr. Reefer on leave without pay (no benefits including insurance) while the case was still pending in the Maryland State's Attorney's Office.

31. Also, on October 28, 2018, Mr. Reefer met with officials within OPRI to request that he be allowed to remain on paid leave while his case was still pending.

32. Mr. Reefer pleaded with WMATA officials to no avail, offering that he had a new born and that he desperately needed his medical insurance and pay.

33. On October 30, 2018, Chief Pavlik issued Mr. Reefer two Letters of Suspension indicating that, "The Investigation concludes that you failed to complete a MTPD Use of Force Report," and that he approved the recommendation that Mr. Reefer receive a ten (10) hour suspension without pay for violating General Order #130, Use of Force, Section IV, E(1): "A member will notify a supervisor without delay each time force is used, a comprehensive Use of Force Report will be completed as soon as possible."

34. In the second Letter of Suspension issue on October 30, 2018, Chief Pavlik suspended Mr. Reefer for 30 days indicating that the investigation concluded that the amount of force that Mr. Reefer used was unreasonable.

35. On October 30, 2018, while his case was still pending in the Maryland State's Attorney's Office, Chief Pavlik issued Mr. Reefer a Letter of Termination indicating that it was based on an investigative report conducted by the OPRI concerning Mr. Reefer's use of unreasonable force and subsequent indictment by the Grand Jury.

36. Chief Pavlik claimed that the investigation proved that Mr. Reefer was guilty of violating General Order #217, Ethical Standards of Conduct and Financial Interests, Section III,

A (1). *"Members will not conduct themselves in an immoral, indecent, or disorderly manner or in a manner that may be construed as such by a reasonable person,"* and Section III, D (9). *Members will conduct their professional and private lives, including Social Network Website, so as to avoid bringing discredit or the appearance of discredit upon themselves or the Department."*

37. The Letter of Termination also indicated that Mr. Reefer violated the Metro Transit Police Oath of Office which states in part, *"I do hereby swear (or affirm) that ..... I will obey as well as enforce the law where it is incumbent upon me to do so. "*

38. Mr. Reefer's case was ultimately dismissed by the State's Attorneys' Office on the day the trial was to begin.

39. In comparison, other White officers with more harsh alleged violations than Mr. Reefer's have been placed on leave with pay (including full benefits) for up to 2 years and allowed to either return to WMATA or retire.

40. Often times, the incidents involving White Officers are handled internally if at all possible.

41. The White officers are consistently placed on paid administrative leave pending the investigation; they are not typically placed on leave without pay.

42. Ultimately, whether the investigation yields a violation or not, the White officers are reprimanded via trainings, reassignment, early retirement, or resignation but not termination.

43. In contrast, Black and Hispanic (darker in color) officers are placed on leave without pay or benefits and terminated.

44. Where Mr. Reefer subdued a subject for his and the subjects protection and released him when the subject became calm, Officer W.O. struck a pedestrian with his patrol vehicle and pulled his service weapon on the pedestrian instructing him to back away.

45. Upon information and belief, Officer W.O. left the scene (hit and run) without reporting it or allowing the incident to be addressed in the legal and proper manner.

46. WMATA did not initially refer W.O.'s case to the Maryland State's Attorney, but investigated it internally; yet, upon information and belief, it was opened due to civilian outrage.

47. Mr. Reefer was indicted with Assault in the 2nd Degree and Misconduct in Office, and, upon information and belief, Officer W.O. was charged with the more serious offences of 1st Degree Assault/2nd Degree Assault and Reckless Endangerment, and Mr. Reefer and Officer W.O. Officers were arraigned and set for trial.

48. The Maryland State's Attorney's Office dropped the case against Mr. Reefer's just prior to trial, but Officer W.O.' case was brought forward for prosecution.

49. Officer W.O.'s charges were reduced to "Leaving after Colliding Personal Injury" and Deferred Prosecution of the case pending W.O.'s completion of a community service program.

50. Unlike Mr. Reefer who was terminated by Chief Pavlik before the conclusion of his case, Officer W.O. was not placed on Leave Without Pay, but was placed on a lengthy leave with pay for more than 9 months and allowed to return to work with Chief Pavlik's approval.

51. Another of Mr. Reefer's co-workers, Officer L.H., upon information and belief, hit a teenager with a closed fist several times in the face during a time that the teen was not under arrest.

52. Officer L.H. was charged with Assault.

53. Pursuant to WMATA's policies and procedures, L.H. should have completed a Use of Force Report, but he did not.

54. Upon information and belief, L.H. was not suspended like Mr. Reefer who had in fact completed the form and submit it through the electronic system.

55. While Mr. Reefer was placed on LWOP for a portion of his investigation until his termination, with Chief Pavlik's approval, Officer L.H. was allowed to continue working in an administrative capacity with pay for Metro Transit Police.

56. Officer L.H. was subsequently allowed to go back to work while Mr. Reefer was terminated by Chief Pavlik prior to the Maryland State's Attorneys Office dismissing his case.

57. Under Chief Pavlik's authorization, WMATA also allowed Officer S.S., who, upon information and belief, actually pled guilty to a Second-Degree Assault to resign to avoid termination.

58. Unlike Mr. Reefer, during his investigation, S.S. was placed on paid leave.

59. Unlike Mr. Reefer who was denied his pay and employee benefits pending the outcome of his case, S.S. was allowed to continue his employer benefits pending the outcome of his case.

60. S.S. was not immediately terminated unlike Mr. Reefer who was immediately terminated instead of waiting for whether or not he would be found guilty.

61. Notwithstanding the fact that Officer S.S. plead guilty to the charges brought against him, WMATA allowed Officer S.S. the privilege of resigning even with a guilty finding of Second-Degree Assault on his record.

62. Additionally, during his time employed with WMATA, Mr. Reefer was continuously placed at the most aggressive stations with no break in assignments, and was not provided with treatment after many traumatic events and physical altercations.

63. In contrast with White officers who were not continuously placed at these aggressive stations for long periods of time.

**COUNT ONE**
**(Discrimination on the Basis of Race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

65. As an African American, Plaintiff is a member of a protected class.

66. Plaintiff was subjected to an adverse action in the form of his termination from Defendant's employ.

67. As the discipline to which Plaintiff was subjected was demonstrably harsher than that meted out by Defendant to Plaintiff's white co-workers charged with the same or worse misconduct, Plaintiff charges that his termination was the result of his race.

68. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment when he was paced on LWOP and Administrative Leave and when he lost his employment with Defendant.

69. Defendant knew that Plaintiff is an African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions.

70. As described above, Plaintiff has been treated differently and subjected to different terms and conditions of employment in comparison with his Caucasian co-workers.

71. As stated above, other employees that worked in the same position as Plaintiff, under the same management as Plaintiff, and were charged with the same, similar, or more egregious misconduct as Plaintiff, but were members of a different class than Plaintiff by virtue of being Caucasian as opposed to African-American, have been treated more favorably then Plaintiff in the terms and conditions of employment.

72. These White Officers who were Plaintiff's coworkers and worked alongside Plaintiff have not been placed on LWOP on administrative leave or been terminated, for having engaged in the same, similar, or more egregious misconduct.

73. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

74. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

75. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

76. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American).

77. Defendant discriminated against Plaintiff because of his race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

78. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

79. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

80. Plaintiff has incurred lost wages, loss of reputation and loss of career

opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a.    Award compensatory damages in a fair and just amount;

    b.    Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

    c.    Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

    d.    Award reasonable attorney fees, costs, and expenses with interest incurred for this action;

    e.    Order Defendant to institute a policy and procedure to be implemented against discrimination;

    f.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    g.    Supervisory training for the supervisors at issue herein;

    h.    Award equitable, declaratory, and injunctive relief; and

    i.    Award such other and further relief as this Honorable Court deems just and proper.

### Equitable Relief

81.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

82. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants, and employees.

## JURY DEMAND

83. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

October 24, 2019                               Respectfully submitted,

                                         By: */s/ Donna Williams Rucker*
                                              Donna Williams Rucker
                                              (MD Bar No. 40918)
                                              Deputy Managing Partner
                                              Tully Rinckey, PLLC
                                              815 Connecticut Ave.,
                                              N.W., Suite 720
                                              Washington, DC 20006
                                              (202) 787-1900
                                              (202) 640-2059
                                              drucker@fedattorney.com